IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ | : | |
| Fenfluramine/Dexfenfluramine) | : | MDL DOCKET NO. 1203 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| | : | |
| BETH KANNER, et al. | : | |
| v. | : | CIVIL ACTION NO. 02-20116 |
| ARNOLD LEVIN, et al. | : | |
| | : | |

## MEMORANDUM AND PRETRIAL ORDER NO.

Bartle, J.                                              August    , 2005

        This is a legal malpractice action against those
attorneys who have served as Class Counsel and as members of the
Plaintiffs' Management Committee[1] ("PMC") in connection with the
Nationwide Class Action Settlement Agreement ("Settlement

---

1.  The defendants are:  Arnold Levin; Michael D. Fishbein;
Levin, Fishbein, Sedran & Berman; Stanley M. Chesley; Waite,
Schneider, Bayless & Chesley; John J. Cummings, III; Cummings,
Cummings & Dudenhefer; Roger P. Brosnahan; Brosnahan, Joseph &
Suggs; Elizabeth J. Cabraser; Lieff, Cabraser & Heimann; Michael
D. Hausfeld; Cohen, Milstein, Hausfeld & Toll; Will S. Kemp;
Harrison, Kemp & Jones; Dianne M. Nast; Roda & Nast; J. Michael
Papantonio; Levin, Middlebrooks, Thomas, Mitchell, Green,
Eschner, Proctor & Papantonio; John M. Restaino, Jr.; Lopez,
Hodes, Restaino, Milman & Skikos; Darryl J. Tschrin; Tschrin &
Thomson; Gene Locks; Greitzer & Locks; Sol H. Weiss; Anapol,
Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.; Charles R.
Parker; and Hill & Parker (collectively, "Class Counsel" and the
PMC.  As set forth in their complaint, plaintiffs bring claims
against the individual defendants with respect to their
activities as Class Counsel and members of the PMC.  Plaintiffs
bring claims against the defendant law firms which employed
attorneys who represented the PMC.

Agreement") involving Wyeth's[2] diet drugs Pondimin and Redux in
in <u>Brown v. American Home Products Corporation</u>, CIV.A. No. 99-
20593 (E.D. Pa. Aug. 28, 2000).  The court approved the
Settlement Agreement in Pretrial Order ("PTO") No. 1415 (E.D. Pa.
Aug. 28, 2000) nearly five (5) years ago.  Plaintiffs allege that
defendants failed to investigate claims for neurotoxic injuries
and to include such claims as part of the Settlement Agreement.
Before the court is the motion to dismiss the complaint for
failure to state a claim upon which relief can be granted under
Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the
alternative, for summary judgment under Rule 56 against
plaintiffs Beth Kanner and Donna Sklute.

    Plaintiffs submitted to the AHP Settlement Trust
("Trust") initial opt-out forms to exclude themselves from the
settlement several months before the court approved the
Settlement Agreement on August 28, 2000.  These submissions
manifested their intent to opt-out of the Settlement Agreement
and pursue their claims against Wyeth.  <u>See</u> Settlement Agreement
§ IV.D.2.b.

    Plaintiffs pursued their claims as initial opt-outs
outside the context of the Settlement Agreement and took
advantage of the opportunity to sue Wyeth for their alleged
neurotoxic injuries.  On August 17, 2001 and September 4, 2001
both plaintiffs Kanner and Sklute, respectively, executed a

---

2.  Wyeth was previously known as American Home Products Corp.
("AHP").

-2-

Confidential Release, Indemnity and Assignment ("Release Forms")
with Wyeth in settlement of their claims.

In their respective Release Forms, plaintiffs agreed to
enter into a settlement to end all litigation by and between
plaintiffs and Wyeth and to resolve fully all claims, differences
and controversies by and between plaintiffs and Wyeth that exist,
have existed or may exist in the future and which arise from
plaintiffs' alleged ingestion of Wyeth's diet drugs.  See Release
Forms, ¶ I.C.  The Release Forms' definition of "Settled Claims"
was extensive, including claims for personal injury and/or bodily
injury, compensatory damages, punitive, exemplary, statutory and
other multiple damages or penalties of any kind, loss of wages,
income, earnings, and earning capacity, medical expenses,
injunctive and declaratory relief.  Id., ¶ II.A.3.

In their complaint in this action, originally filed on
November 7, 2001 in the Supreme Court for the State of New York,
County of New York, plaintiffs allege that Class Counsel and the
PMC breached their duty to act as fiduciaries for all individual
class members in the diet drug litigation by failing to
investigate and to include in the Settlement Agreement claims for
neurotoxic injuries resulting from the ingestion of Wyeth's diet
drugs.  On December 7, 2001, defendants removed the action to the
United States District Court for the Southern District of New
York.  On April 19, 2002 the action was transferred here as a
part of MDL 1203.

In connection with defendants' pending motion to dismiss this malpractice action for failure to state a claim upon which relief can be granted, all well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the non-movant. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In addition, we may consider matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993) (citations omitted). Since no one contends otherwise, we will apply Pennsylvania law. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941).

The elements of legal malpractice in Pennsylvania are: "(1) [t]he employment of the attorney or other basis for duty; (2) [t]he failure of the attorney to exercise ordinary skill and knowledge; and (3) [t]hat such negligence was the proximate cause of damage to the plaintiff." See Rizzo v. Haines, 555 A.2d 58, 65 (Pa. 1989) (quotation omitted). Another essential element is proof of actual loss rather than a breach of professional duty causing only nominal damages, speculative harm or the threat of future harm. See Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182, 1184 (Pa. Super. Ct. 2000), app. denied, 795 A.2d 978 (Pa. 2000) (quotation omitted).

-4-

Class Counsel, of course, had a duty to act in the "best interests of the class considered as a unit."[3]  See <u>Thomas v. Albright</u>, 77 F. Supp. 2d 114, 122 (D.D.C. 1999), <u>aff'd</u> <u>sub nom.</u> <u>Thomas v. Powell</u>, 247 F.3d 260 (D.C. Cir. 2001).  However, neither Class Counsel nor the PMC owed plaintiffs any duty after they decided not to be part of the Settlement Agreement.  At that point, Class Counsel and the PMC were no longer counsel for plaintiffs, since they had excluded themselves from the class.  Instead, plaintiffs had their own privately retained attorney, Ronald R. Benjamin.

In approving the Settlement Agreement, this court found that defendants adequately and competently performed their duties towards the class.  <u>See</u> PTO No. 1415 at 99-123.  Equally as important, this court evaluated all of the available evidence in determining that it was proper to exclude neurotoxic claims from the Settlement Agreement.  <u>See</u> <u>id.</u> at 108-13.  Even though

---

3.  The duty of the PMC is even more limited in multidistrict litigation than that of Class Counsel.  As set forth in the <u>Manual for Complex Litigation</u>, the role of lead counsel in complex litigation is:

> to act for the group - either personally or by coordinating the efforts of others - in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

<u>Manual for Complex Litigation</u> (Fourth) § 10.221 (2004).  As with Class Counsel, the PMC's obligations run to the group of plaintiffs as a whole.

neurotoxicity had been studied for over twenty-five years, no evidence was presented that established that diet drugs could cause neurotoxic injuries.  PTO No. 1415 at 110.  In addition, the court-approved notice sufficiently informed diet drug users that under the Settlement Agreement, class members would release all claims for neurotoxic injuries.  The notice further explained the need to opt out of the Settlement Agreement to pursue any such claims.  It stated:

> Some people believe that a very subtle kind of brain damage - neuropsychiatric or neurotoxic injury - may be caused by use of Pondimin and/or Redux.  However, the question of whether such brain injury can occur as a result of diet drug use is controversial.  Also, there are presently no published clinical studies that show that people who took Pondimin or Redux have any brain injury as a result.  The [S]ettlement provides no benefits for such neuropsychiatric or neurotoxic injuries.  If you do not opt-out [sic] of the settlement, you will not be able to pursue in [C]ourt any claim for neuropsychiatric or neurotoxic injury.

See id. at 112-13; see Official Court Notice to the Settlement Agreement at 14.

Class Counsel negotiated a Settlement Agreement which specifically provided all plaintiffs with the opportunity to opt out of the Settlement Agreement and pursue the very claims which plaintiffs Kanner and Sklute pursued and settled with Wyeth.  This court found Class Counsel's representation in this regard to be fair and adequate.  Thus, defendants did not breach any duty toward plaintiffs.

To the extent plaintiffs were class members or putative class members in <u>Brown</u> and represented by defendants, their malpractice claim is barred for the additional reason that the doctrine of collateral estoppel precludes them from challenging the adequacy of Class Counsel's representation in negotiating the Settlement Agreement. Collateral estoppel applies when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment. <u>See</u>, <u>e.g.</u>, <u>Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.</u>, 63 F.3d 1227, 1231-32 (3d Cir. 1995).

First, during the Fairness Hearing, the court considered the same issues plaintiffs attempt to relitigate in the instant malpractice action. Second, the issues of neurotoxicity and the adequacy of Class Counsel's representation were fully and fairly litigated at that time. <u>See id.</u> Plaintiffs had the opportunity to appear at the Fairness Hearing and present their objections to the Settlement Agreement to Class Counsel. Third, this court entered a judgment on the merits in PTO No. 1415, finding that Class Counsel adequately represented the class and that there was no evidence that Wyeth's diet drugs caused neurotoxic injuries. All issues on appeal relating to this judgment were resolved and such judgment became final. Indeed, Kanner was one of the appellants. The Third Circuit Court of Appeals dismissed her appeal on May 15, 2001. <u>In re</u>

-7-

<u>Diet Drugs</u>, Civ.A. No. 00-2862 (3d Cir. May 15, 2001).  Fourth, the determination was essential to the judgment.  The Settlement Agreement would not have been approved unless Class Counsel had fulfilled their duties and responsibilities to the class.  Under the doctrine of collateral estoppel, plaintiffs' claims are barred to the extent they were class members or putative class members represented by defendants.

    In sum, plaintiffs have not stated a claim for malpractice against defendants for their representation of plaintiffs either before or after they opted out of the settlement of the Nationwide Class Action in <u>Brown</u>.  We will grant the motion of defendants to dismiss plaintiffs' complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (Phentermine/ :
Fenfluramine/Dexfenfluramine) : MDL DOCKET NO. 1203
PRODUCTS LIABILITY LITIGATION :
                                :
THIS DOCUMENT RELATES TO:       :
                                :
BETH KANNER, et al.             :
          v.                    : CIVIL ACTION NO. 02-20116
ARNOLD LEVIN, et al.            :
                                :

**PRETRIAL ORDER NO.**_____

          AND NOW, this      day of August, 2005, for the

reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that:

          (1)  the motion of defendants Arnold Levin; Michael D.

Fishbein; Levin, Fishbein, Sedran & Berman; Stanley M. Chesley;

Waite, Schneider, Bayless & Chesley; John J. Cummings, III;

Cummings, Cummings & Dudenhefer; Roger P. Brosnahan; Brosnahan,

Joseph & Suggs; Elizabeth J. Cabraser; Lieff, Cabraser & Heimann;

Michael D. Hausfeld; Cohen, Milstein, Hausfeld & Toll; Will S.

Kemp; Harrison, Kemp & Jones; Dianne M. Nast; Roda & Nast; J.

Michael Papantonio; Levin, Middlebrooks, Thomas, Mitchell, Green,

Eschner, Proctor & Papantonio; John M. Restaino, Jr.; Lopez,

Hodes, Restaino, Milman & Skikos; Darryl J. Tschrin; Tschrin &

Thomson; Gene Locks; Greitzer & Locks; Sol H. Weiss; Anapol,

Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.; Charles R.

Parker; and Hill & Parker (collectively, "Class Counsel" and the "Plaintiffs' Management Committee") to dismiss is GRANTED;

      (2)   the alternative motion of Class Counsel and the Plaintiffs' Management Committee for summary judgment is DENIED as moot; and

      (3)   plaintiffs' complaint is DISMISSED with prejudice.

BY THE COURT:

_____
                                 J.